**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando Division**

| | |
|---|---|
| PHILLIP BAKER<br>*on behalf of himself and*<br>*all similarly situated individuals*,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>NATIONWIDE SCREENING SERVICES INC,<br><br>　　　　　　　　Defendant. | :<br>:<br>:<br>:  Civil Action No. _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, Phillip Baker, on behalf of himself and all similarly situated individuals, and for his Complaint against the Defendant, he states as follows:

**INTRODUCTION**

1. This is a class action for damages, costs and attorneys' fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding employees and applicants.

3. In July 2018, Plaintiff applied for a position at BlueCross/BlueShield through staffing agency Spectraforce Technologies. The consumer report provided by Defendant to Spectraforce was grossly inaccurate and contained obsolete information that cannot be reported under the FCRA.

1

4. First, the report falsely stated that Plaintiff has been convicted of two felonies for distribution and possession of cocaine in Louisiana in 1988. Plaintiff has never lived in Louisiana and the "Phillip Baker" associated with the cocaine convictions is not Plaintiff. Defendant's report indicates that there is no birth date associated with the records for cocaine convictions and further notes that there are "no other identifiers on file." Yet Defendant nevertheless reported Plaintiff as being convicted of cocaine charges merely because Plaintiff and the convicted felon share the same, very common, name.

5. Defendant thus violated § 1681e(b) of the FCRA which requires consumer reporting agencies to "follow reasonable procedure to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of its records, and its failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

6. The report also contains multiple dismissed or amended driving related offenses that predate the report by more than seven years. The FCRA unambiguously forbids reporting any criminal or other adverse information on consumers, other than convictions of crimes, which predates the report by more than seven years. *See* 15 U.S.C. § 1681c(a). By reporting charges of which Plaintiff was never convicted, Defendant broke the law.

7. On behalf of himself and a class of similarly situated individuals, Plaintiff brings claims pursuant to § 1681c(a) of the FCRA.

8. Plaintiff also brings an individual claim for Defendant's violation of § 1681e(b).

## PARTIES

9. Plaintiff Phillip Baker is a natural person and a "consumer" as defined by § 1681a(c) of the FCRA.

10. Defendant Nationwide Screening Services Inc. ("Nationwide") is a New York corporation headquartered in Melville, New York. Nationwide is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Nationwide is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in 15 U.S.C. §1681a(d).

## JURISDICTION/VENUE

11. The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

12. Pursuant to 28 U.S.C. §1391(b)(1) and (2), Venue is proper in this Court because Plaintiff is a resident of Orlando, Florida and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Middle District of Florida, including in this District and Division.

13. Pursuant to U.S. District Court for the Middle District of Florida Local Rule 1.02, this proceeding is properly instituted in the Orlando Division because Orange County has the greatest nexus with the cause.

14. NATIONWIDE knew in this case and many others that the subject of its background reports was a Florida resident applying for employment in Florida who would be adversely affected by negative information contained in a background report.

15. As such, NATIONWIDE engages in substantial and not isolated activity within Florida and this Court has personal jurisdiction over NATIONWIDE pursuant to Sections 48.193(1)(a)1., 2., and 6. of the Florida Statutes.

16. Based on the foregoing, NATIONWIDE has sufficient contact with the State of Florida that exercising personal jurisdiction over NATIONWIDE complies with fair play and substantial justice, as required by due process.

17. As here, many of these reports relate to Florida residents located in the Middle District of Florida. As such, NATIONWIDE conducts substantial and regular business activities in the Middle District of Florida and, pursuant to 28 U.S.C. 1391(c)(2) and (d), NATIONWIDE resides in the Middle District of Florida.

## THE FAIR CREDIT REPORTING ACT

18. Despite its name, the Fair Credit Reporting Act regulates not only credit reports, but also criminal background checks.

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to include background reports procured for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

22. The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave

responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

23. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

24. Under 15 U.S.C. § 1681c(a), a report may not include dismissed or amended charges, "records of arrest" or "any other adverse item of information, other than the records of convictions of crime," that antedate the report by more than seven years. 15 U.S.C. § 1681c(a)(2), (5).

**DEFENDANT'S INACCURATE, INCOMPLETE, AND OBSOLETE REPORT**

25. In July 2018, Plaintiff applied for a position with Blue Cross/Blue Shield through staffing agency Spectraforce.

26. The position with BlueCross/BlueShield was a contract position lasting throughout the open enrollment season. Plaintiff was not expected to make an annual salary of $75,000 or more at this position.

27. As part of the application process, Spectraforce obtained a consumer report about Plaintiff from Nationwide.

28. Because the background report contained information regarding Plaintiff's "character, general reputation, personal characteristics, or mode of living," the background check was a consumer report as defined under the FCRA. 15 U.S.C. § 1681a(d).

29. The report was inaccurate and contained outdated information.

30. First, Nationwide's report stated that Plaintiff had been convicted of two felony offenses for distribution and possession of cocaine in Louisiana in 1989 and sentenced to five years in prison under the distribution offense and four years in prison under the possession offense. This was false.

31. Plaintiff has never lived in Louisiana.

32. The report states that the "DOB ON RECORD" associated with the Louisiana convictions is "0000-00-00." Indeed, the report itself indicates that there are "NO OTHER IDENTIFIERS ON FILE" regarding the 1988 cocaine conviction.

33. Nevertheless, despite lacking any information other than a name, Defendant reported a match based solely on the fact Plaintiff's very common name matched the name of a convicted felon in Louisiana.

34. The report also included obsolete information.

35. The report references a first degree misdemeanor charge from 2006 for driving with a license cancelled, suspended, or revoked. Plaintiff, however, was not convicted of that charge. Instead, the charge was amended down to a charge for driving without a valid drivers' license.

36. The report also references misdemeanor charge from 1998 for driving under the influence causing damage/injury that was also amended and dismissed.

37. Because of Defendant's report, Plaintiff did not obtain the position at Blue Cross/BlueShield. Defendant's actions caused Plaintiff emotional distress, including frustration, anxiety, and embarrassment.

## **DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

38. Defendant sells criminal background checks to employers that run background checks on job applicants and employees.

39. Defendant's criminal background checks provide information about whether a job applicant or employee has a criminal history. Defendant's background checks thus bear on a consumer's "character, general reputation, personal characteristics, or mode of living" and are consumer reports under the FCRA. 15 U.S.C. § 1681a(d).

6

40. Defendant fails to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

41. Defendant matches people with records based on name-only matching. The practice results in many false positives as many people have the same name. It is contrary to the standard of maximum possible accuracy and industry standards to employ name-only matching procedures for criminal records.

42. Further, Defendant's reports contain obsolete information. When a consumer reporting agency furnishes a consumer report to the consumer or a third party, the agency is required to exclude adverse items of information which antedate the consumer report by more than seven years. 15 U.S.C. § 1681c(a)(5).

43. This prohibition includes the reporting of non-conviction information that antedates the report by more than seven years, including any charge which did not ultimately result in a criminal conviction. *See* 15 U.S.C. §§ 1681c(a)(2), (a)(5); *see also Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3-*4 (N.D. Ill. July 17, 2014) (holding that the "express language of the FCRA" mandates that "a consumer reporting agency may not include any adverse item of information other than a 'record of conviction' not a 'record of dismissed charges'"); *Haley v. Talentwise, Inc.*, 9 F. Supp. 3d 1188, 1192-95 (W.D. Wash. 2014) (finding that under the "plain language" of the FCRA, a "dismissed charge from over seven years ago is both a 'record of arrest' and 'adverse' information that [a consumer reporting agency] is prohibited from including in [a] consumer report") (citing *Serrano v. Sterling Testing Syst.*, 557 F. Supp. 2d 688, 693 (E.D. Penn. 2008)); *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1394 (N.D. Cal. 2014) ("In light of the remedial purpose of the Act, this order now holds that only the actual convictions may be reported and stale dismissed counts must be combed out and go

unreported."); *Dowell v. Gen. Info. Servs, Inc.*, 13-CV-02581-L-BGS, Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act, at 17 (S.D. Cal. Feb. 20, 2014) (stating that dismissed charges, even if associated with a conviction, may not be reported under the FCRA).

44. Defendant's practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance. *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano*, 557 F. Supp. 2d 688 (holding FCRA prohibits even alluding to existence of unreportable adverse information).

45. It is standard practice for consumer reporting agencies to write algorithms "to filter out obsolete credit information." See http://www.consumeradvocates.org/issues/credit-reporting-problems (last accessed Feb. 16, 2016).

46. Defendant is aware of the power of algorithms, and their usefulness in structuring consumer reports. Defendant, consistent with standard industry practices, easily could have written an algorithm to ensure that all of its reports would exclude non-criminal offense information older than seven years.

47. Defendant failed to use an appropriate algorithm to exclude non-convictions, such as the dismissed charges at issue here, in spite of the fact that it easily could have done so and that these types of algorithms are standard in the credit reporting industry.

48. It is also standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). By failing to utilize a purge date for outdated information, Defendant's practices and procedures fall far below industry standards and constitute recklessness.

49. Defendant is aware of the FCRA's requirements as it is a member of the National Association of Professional Background Screeners ("NAPBS"). NAPBS puts on conferences multiple times a year where presenters discuss FCRA compliance.

50. Defendant publishes a monthly newsletter called "Inside Background Screening" which contains news regarding FCRA litigation and compliance.

51. Defendant places its business interests above the rights of consumers and reports such inaccurate, incomplete, and obsolete information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

52. Defendant reports such erroneous, incomplete, and obsolete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

53. Accordingly, Defendant systematically and willfully violated the FCRA provisions at issue in this lawsuit.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

55. Plaintiff asserts Counts I on behalf of himself and the proposed Class defined as follows:

Obsolete Information Class

All persons who were the subject of a background check prepared by Defendant and whose report contains one or more items of criminal information which are non-convictions, where such information antedates the report by more than seven years. Class membership begins on the date two years prior to the filing of the original Complaint in this matter and continues through the date on which the Class list is prepared.

56. Adequacy.  Plaintiff will fairly and adequately represent the interests of all members of the class. Plaintiff has no conflict of interest with the members of the class and has retained counsel experienced in complex class action litigation.

57. Numerosity:  The Class is so numerous that it is impractical to bring all Class members before the Court.  Defendant has issued thousands of reports on job applicants and employees in the past two years.

58. Typicality:  Plaintiff's claims are typical of the Class members' claims. The FCRA violations committed by Defendant were committed pursuant to uniform policies and procedures, and defendant treated Plaintiff in the same manner as other Class members in accordance with its standard policies and practices.

59. Commonality and Predominance:  Common questions of law and fact exist that are substantially similar as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including without limitation:

(a) Whether Defendant violated the FCRA by including non-conviction information that antedated the report by more than seven years;

(b) Whether Defendant's violations of the FCRA were willful;

(c) The proper measure of damages.

60. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum. Moreover, in view of the complexities of the issues and the expenses of litigation the separate claims of individual Class members are insufficient in amount to support separate actions.

## COUNT ONE:
### Violation of 15 U.S.C. § 1681c(a)
### On Behalf of Plaintiff and the Obsolete Information Class

61. Plaintiff, on behalf of himself and all similarly situated individuals, sues Nationwide and realleges and incorporates by reference the allegations contained in paragraphs 1 through 60, above.

62. The consumer reports provided by Defendant included adverse information other than criminal conviction information antedating the reports by more than seven years in violation of 15 U.S.C. § 1681c(a).

63. The foregoing violations were negligent and/or willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Obsolete Information Class members under 15 U.S.C. § 1681c(a). In addition to the allegations set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

    a)     The FCRA was enacted in 1970; Defendant has had years to become compliant;

    b)    Defendant is a company which specializes in furnishing consumer reports for employment purposes and has access to legal advice. Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

    c)    Defendant could have easily established and used a computer based algorithm to filter the database from which it produces consumer reports to ensure that non-criminal information was excluded if they were older than seven years, but failed to employ any such algorithm to filter its reports;

    d)    Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    e)    Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting adverse information other than criminal convictions that antedated the report by more than seven years. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

64.    Plaintiff and the Obsolete Information Class are entitled to are entitled to actual damages, statutory damages of not less than $100 and not more than $1,000 for each violation, punitive damages, and attorneys' fees. 15 U.S.C. §§ 1681n, o.

## COUNT TWO
### 15 U.S.C. § 1681e(b)
### On Behalf of Plaintiff

65.    Plaintiff sues Nationwide, and realleges and incorporates by reference the allegations contained in paragraphs 1 through 53, above.

12

66. Defendant negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" in preparing Plaintiff's consumer report. 15 U.S.C. § 1681e(b).

67. The foregoing violations were negligent and/or willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681e(b). In addition to the allegations set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

    a) The FCRA was enacted in 1970; Defendant has had years to become compliant;

    b) Defendant is a company which specializes in furnishing consumer reports for employment purposes and has access to legal advice. Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

    c) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    d) Defendant's similarly situated competitors have adopted policies of using all identifying information available to ensure that records reported match the subject of the report;

    e) Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting adverse information other than criminal convictions that antedated the report by more than seven years. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

68. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to his actual damages, statutory damages, punitive damages, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for relief as follows:

a) Determining that this action may proceed as a class action;

b) Designating Plaintiff as representative for the Class and designating Plaintiff's Counsel as counsel for the Class;

c) Issuing proper notice to the Class at Defendant's expense;

d) Declaring that Defendant committed multiple, separate violations of the FCRA;

e) Declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and Defendant's obligations under the FCRA;

f) Awarding actual, statutory, and punitive damages as provided by the FCRA;

g) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h) Granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class demand a trial by jury.

Dated: March 20, 2019                     /s/ Barry S. Balmuth
                                          Barry S. Balmuth, B.C.S.
                                          FL Bar No. 0868991
                                          BARRY S. BALMUTH, P.A.
                                          The Oaks Center - 2505 Burns Road
                                          Palm Beach Gardens, Florida 33410
                                          Tel: (561) 242-9400
                                          Fax: (561) 366-2650
                                          barryb@flboardcertifiedlawyer.com
                                          karenb@flboardcertifiedlawyer.com

                                          E. Michelle Drake (Trial Counsel)
                                          MN Bar No. 0387366*
                                          John G. Albanese (Trial Counsel)
                                          MN Bar No. 0395882*
                                          BERGER MONTAGUE PC
                                          43 S.E. Main Street, Suite 505
                                          Minneapolis, MN 55414
                                          Tel: (612) 594-5999
                                          Fax: (612) 584-4470
                                          emdrake@bm.net
                                          jalbanese@bm.net

                                          **pro hac vice* forthcoming

                                          Counsel for Plaintiff and the Class